**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

UNITED STATES OF AMERICA,

     v.

KYRELL BENTON; JAMALL BROWN;
STACEY BENTON; and TINA LIPSEY,

    Defendants.

CASE NO.: 4:20-cr-22

**O R D E R**

The Court has set this case for trial commencing August 23, 2021.  (See doc. 279.)  At the telephonic status conference on July 8, 2021, the Court explained to counsel that soon the Court will not have any space suitable for conducting a jury trial in Savannah and inquired whether the parties would consent to trying this case outside the Savannah Division.  Defendant Stacey Benton responded that due to his grave medical condition, he objects to holding trial on the charges against him in any location.  (Doc. 274.)  Defendants Kyrell Benton and Tina Lipsey objected to holding trial outside of the Savannah Division, (docs. 271, 272), and Defendant Jamall Brown consented to trial in the Court's Statesboro Division, (doc. 270).

Defendant Stacey Benton attached medical records to his response indicating that he has brain cancer that is likely terminal and asserted that it would be impossible for him to attend trial in any location.  (Doc. 274, p. 4.)  The Court **ORDERS** the United States to file a response to Defendant Stacey Benton's Objection on or before August 10, 2021.  Therein, the United States shall state whether it intends to continue the prosecution of Defendant Stacey Benton and, if so, whether the United States agrees that the charges against Defendant Stacey Benton should not be included the upcoming trial of this case.

For the reasons set forth below, the Court **OVERRULES** Defendants Kyrell Benton's and Tina Lipsey's objections to holding trial outside of the Savannah Division.  The jury selection and trial of this case will commence at the United States Courthouse in Statesboro, Georgia, on August 23, 2021.  However, the Court **GRANTS** Defendant Kyrell Benton's objection to having the jury selected from the Statesboro Division. This case will be tried before a jury comprised of citizens of the Savannah Division.

## BACKGROUND

On March 5, 2020, the grand jury in this district indicted Defendants Kyrell Benton and Jamall Brown on multiple counts including allegations that they conspired to manufacture, posses with intent to distribute, and distribute methamphetamine.  (Doc. 1.)  On May 20, 2020, the grand jury returned a superseding indictment which added Stacey Benton, Antwan Benton, and Tina Lipsey as Defendants.  Defendant Antwan pleaded guilty and was sentenced on March 4, 2021. (Doc. 243.)  The trial of the charges against the four remaining defendants has been delayed due to health and safety concerns caused by the COVID-19 pandemic.  (See docs. 34, 39, 82, 118, 127, 136, 195, 226, 235, 253.)

On July 8, 2021, the Court held a telephonic scheduling conference with counsel.  After hearing from counsel regarding the time needed to prepare for trial and counsel's professional and personal calendars, the Court entered an Order scheduling the pretrial conference in this case for August 16, 2021 and commence jury selection and trial to commence on August 23, 2021. (Doc. 279.)

During the scheduling conference, the Court also advised counsel of a predicament the Court will face regarding courtroom space in the Savannah Division beginning September 1, 2021. On or around that date, the General Services Administration will begin an extensive renovation of

the Tomochichi United States Courthouse, which is currently the Court's only facility within Savannah. The project will require the Court to entirely vacate the Tomochichi Courthouse. While plans have been made for the Court to occupy temporary space in Savannah during the renovation project, the General Services Administration has failed to timely prepare that temporary space. Indeed, despite the fact that the Court must vacate the Tomochichi Courthouse in less than a month from today, the construction needed to modify the temporary space to safely house the Court's operations has not yet begun.[1] Thus, the temporary space in Savannah will not be ready for the Court's occupancy for several months after the Court vacates the Tomochichi Courthouse. While the Court has searched for alternative space, there simply is no readily available space in the Savannah Division where the Court could safely conduct a federal criminal jury trial. Thus, for at least several months (and for the first time since the founding of this nation) this Court will not have space in Savannah, Georgia, to conduct a criminal jury trial. This predicament is due to no fault whatsoever of the Court or its employees and obviously causes the Court extreme frustration.

After explaining this predicament to counsel at the status conference, the Court inquired whether the parties would be willing to have this case tried in the United States Courthouse in Statesboro, Georgia, or Brunswick, Georgia with a jury pulled from residents of the Statesboro or Brunswick Division. The United States orally agreed to such an arrangement. However, Defendants Kyrell Benton and Tina Lipsey objected to holding trial outside of the Savannah Division, (docs. 271, 272.) Though Defendant Lipsey provided little argument in support of her objections, Defendant Kyrell Benton argued that trial outside of the Savannah Division would

---

[1] The Court will have some space to operate within the United Sates Courthouse Annex which is currently under construction in Savannah. However, that building was only designed and constructed to house the United States Bankruptcy Court and the United States Probation Office. Thus, while the Court may hold some hearings, such as pretrial conferences, in the Annex during its courtroom space predicament, that building is not equipped to conduct a jury trial much less to safely host a federal criminal jury trial.

infringe upon his Sixth Amendment rights because the Savannah Division has a higher African-American population than the Statesboro Division.  (Doc. 217, p. 2.)  He also contends that because he and his family live and work in Savannah, Georgia, trial in Statesboro or Brunswick would "cause an undue hardship on Defendant and his family to travel."  (Id. at p. 3.)

## DISCUSSION

I.   **Defendants' Request for Trial to be Held in Savannah**

The Sixth Amendment to the United States Constitution guarantees a defendant a speedy and public trial "by an impartial jury of the State and district where the crime was committed." United States v. Betancourt, 734 F.2d 750, 756 (11th Cir. 1984) (quoting United States v. Anderson, 328 U.S. 699, 704 (1946)).  However, "the district" means the judicial district of the United States Courts, and a defendant has no constitutional right to be tried in a particular division. Id.; see also United States v. Merrill, 513 F.3d 1293, 1304 (11th Cir. 2008).  "A district court has discretion to fix the place of a trial in any division within the district, and [the United States Court of Appeals for the Eleventh Circuit] review[s] the district court's decision only for abuse of discretion."  Merrill, 513 F.3d at 1304.  However, the Court's discretion over the location of the trial within the district is not unfettered.  Federal Rule of Criminal Procedure 18 requires a district court to "set the place of trial within the district with due regard for the convenience of the defendant, any victim, the witnesses, and the prompt administration of justice."

In Burns, the district court tried the case in the Southern Division of the Northern District of Alabama over the defendants' request to be tried in that district's Northeastern Division, the division where the defendants resided and the alleged offenses took place.  662 F.2d at 1380—81. The Eleventh Circuit reversed the defendants' convictions and disapproved of the district court's

4

per se rule of holding all criminal trials in its Southern Division.  Id. at 1381—83.  The court

explained that while a defendant does not have a constitutional right to be tried in a certain division,

> a district judge's exercise of discretion resulting in a trial in an environment alien
> to the accused over a proper objection must be supported by a demonstration on the
> record that the judge gave due regard to the factors now incorporated in Rule 18.  .
> .  .  For speedy trial considerations to outweigh such factors they should be set forth
> in findings that are sufficiently detailed to allow review.

Id. at 1383.[2]  To satisfy this analysis, "[m]ore than incantation of the words 'speedy trial'" is

required.  Id.; see also United States v. Garza, 593 F.3d 385, 390–91 (5th Cir. 2010) (reversing

defendant's convictions where district court transferred case from one division to another for trial

without weighing Rule 18 factors) (citing Burns, 662 F.2d at 1383).

On the other hand, in United States v. Pepe, 747 F.2d 632 (11th Cir. 1984), the Eleventh

Circuit held that a trial court did not run afoul of Rule 18 when moving a trial from one division

to another due to concerns over courtroom space because the trial court had made a clear record

of its consideration of the defendants' convenience concerns and found that the "prompt

administration of justice" outweighed those concerns.  Judge Tjoflat highlighted the district court's

findings that courtroom space in Miami was "exceedingly scarce" and that the defendants and their

witnesses were not greatly inconvenienced by having to travel to Fort Lauderdale instead of

Miami.  747 F.2d at 648.  Likewise, in United States v. Merrill, 513 F.3d 1293, 1303–04 (11th Cir.

2008), the Eleventh Circuit upheld the district court's decision to hold a trial in Pensacola rather

than Panama City because there was only one courtroom in Panama City and it would not be

available for a lengthy jury trial.  The Eleventh Circuit emphasized that the trial court had made a

clear record of weighing all the Rule 18 factors.  513 F.3d at 1303–04.  The court explained that

"the prompt administration of justice includes more than the case at bar" and that "matters of

---

[2]  However, the Eleventh Circuit stated that it "see[s] nothing wrong with [the routine setting of all trials in
the Southern Division] as long as a defendant does not object."  Burns, 662 F.2d at 1383.

security clearly fall within that consideration." Id. at 1304 (quoting In re Chesson, 897 F.2d 156, 159 (5th Cir. 1990) and United States v. Afflerbach, 754 F.2d 866, 869 (10th Cir. 1985), respectively).

In the case at hand, the prompt administration of justice weighs heavily towards trying this case in Statesboro. This Court is facing space constraints even more dire than those faced by the district courts in Pepe and Merrill. While those courts each had only one courtroom in the defendant's preferred division to conduct a jury trial, this Court will soon have no such courtroom in Savannah. Matters of security, which fall within the ambit of the prompt administration of justice, lean heavily towards trying this case in the Statesboro Courthouse as it is the courthouse closest to Savannah that is available to the Court and equipped to safely conduct a federal criminal trial.[3] Moreover, this case has been pending for well over a year, and the trial has been repeatedly delayed due to the COVID-19 pandemic. Now that the pandemic has sufficiently abated to the point that the Court can safely resume jury trials, Defendant, the prosecution, the public, the alleged victims, and the Court all have a vested interest in the case being tried without further delay. In addition to the inherent prejudice caused by an even lengthier delay, prolonging the trial would also have practical consequences including the risk of witnesses' memories fading with the passage of time. Additionally, while the objecting defendants have been granted pretrial release, Defendant Jamall Brown has not, and he would remain detained while this case is pending. Further, as detailed above, the lack of courtroom space in Savannah is out of the Court's control, and the Court has no faith that it will be provided suitable space to hold this trial in Savannah in

---

[3] The Eleventh Circuit in Merrill approvingly noted that "[t]he [trial] court also found that the juvenile justice courthouse in Panama City, suggested by [the defendant] as an alternate location for the trial, was not a viable option due to security concerns associated with a federal criminal trial." 513 F.3d at 1304. In this case, Defendants have not suggested an alternative location in Savannah to hold this trial. Nonetheless, the Court has endeavored to find alternative courtroom space in Savannah and has not found any readily available locations that would meet the security requirements necessary for trying this case.

the near future.  Thus, the Court cannot continue this case until trial can be tried in Savannah, because such a continuance would delay the prompt administration of justice indefinitely.

On the other hand, trying this case in Statesboro would only cause minimal inconvenience to Defendant, any alleged victims, and the witnesses.  To be sure, the events giving rise the charges against Defendant allegedly occurred in the Savannah Division.  Moreover, it appears Defendants and their counsel reside in the Savannah Division.  However, the time and distance from Savannah to the Statesboro Courthouse is not substantial.[4]  It takes roughly an hour to travel approximately fifty-five miles from downtown Savannah to the Statesboro Courthouse.  Further, while parking within downtown Savannah is notoriously difficult to find, the Statesboro Courthouse has ample adjacent parking. Defendants have not provided any compelling argument that trial in Statesboro would cause any real inconvenience to them or any victims or witnesses.[5]  While Kyrell Benton states that it would be a "hardship" for him to appear for trial in Statesboro, appearing for court proceedings is one of the obligations he agreed to comply with when the Court granted him bond in this case.  (Docs. 30, 31.)  Moreover, he fails to offer any support for this assertion.  While he states that the trial could take "several days and possibly multiple weeks to conclude," (doc. 271, p. 2), the parties represented at the status conference that the trial would only last a week.  Thus,

---

[4]  The Court is well familiar with the facts in this paragraph and takes judicial notice of them as they are "generally known within the trial court's territorial jurisdiction" and they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

[5]  Indeed, neither Kyrell Benton nor Tina Lipsey actually cited Rule 18, or any other Rule, or any case law in support of their Objections.

trying this case in Statesboro as opposed to Savannah will not be appreciably less convenient for Defendant, the alleged victims, or any witnesses.[6]

For all these reasons, having considered all the facts and circumstances of this case, the Court finds that the prompt administration of justice compels the Court to try this case in Statesboro, and that interest far outweighs the minimal inconvenience that will be caused to Defendants, their counsel, any alleged victims, and the witnesses. Thus, the Court **OVERRULES** Defendants Kyrell Benton's and Tina Lipsey's objections to trying this case outside of the Savannah Division.

## II.     Defendant Kyrell Benton's Request for a Jury Selected from the Savannah Division

Having determined that this case will be tried in Statesboro, the Court next addresses Defendant Kyrell Benton's request that the jury panel be drawn from citizens of the Savannah Division. (Doc. 163.)

In accordance with the Jury Selection and Service Act, this Court has implemented a Plan for the Random Selection of Grand and Petit Jurors (the "Jury Selection Plan" or the "Plan"). The Jury Selection Plan establishes six Jury Management Divisions (Augusta, Brunswick, Dublin, Savannah, Waycross, and Statesboro), and provides that "[j]urors will be selected for service from a single division for petit jurors, from all divisions (pro rata) for grand juries, or from any combination of divisions as the Chief Judge may direct from time to time." (Plan, pp. 5–6.) The Jury Selection Plan also provides for a district-wide petit jury when deemed "appropriate and

---

[6]  To paraphrase a late Judge of this District who would no doubt share the Court's frustration at its courtroom space predicament, but who would also relish the opportunity to try a case in Statesboro: "Autumn in [Statesboro] is a wonderful time of the year, when cooling breezes calm the nerves and energize legal talent. Traffic and airport congestion virtually never exist in [Statesboro], in contrast to [Savannah]. [Statesboro's] lodging accommodations will amply please lawyers and litigants alike. And all shall no doubt enjoy [Statesboro's] legendary hospitality." United States v. Bradley, No. 405CR059, 2005 WL 8153005, at *4 (S.D. Ga. June 16, 2005) (Edenfield, J.).

necessary." (Id. at p. 6.)  The Plan prescribes procedures for the creation of a Qualified Jury Wheel ("QJW") for each division, (id. at pp. 8–11), and the random selection of individuals from the QJW to form grand jury and petit jury panels, (id. at pp. 11–13).

"Challenges to the jury selection process may be based on the fair cross-section requirement of the Sixth Amendment, the equal protection component of the Fifth Amendment, or a substantial failure to comply with the provisions of the [Jury Selection and Service Act]." Grisham, 63 F.3d at 1077 (internal citations omitted).  In the case at hand, Defendant Kyrell Benton argues, without any citation to any case law, that selecting a jury from the Statesboro Division would violate his Sixth Amendment rights.  (Doc. 271, p. 2.)  He contends that the Sixth Amendment guarantees him a "right to a jury of his peers" and that he would not receive such a jury if drawn from Statesboro because African-Americans make up 35.6% of the population of the Savannah Division and only 30.9% of the population of the Statesboro Division.  (Id.)

Regarding the geographical parameters of the community from which a jury is selected, the Sixth Amendment's vicinage provision provides that criminal defendants are entitled to trial "by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law."  U.S. Const. amend. VI.  In United States v. Grisham, 63 F.3d 1074, 1078–81(11th Cir. 1995), the Eleventh Circuit rejected a defendant's argument that district courts are required to select potential jurors only from the division in which the crime allegedly took place.  The court explained that the Sixth Amendment gives Congress the power to define the parameters of vicinage, and that Congress, in turn, did not require potential jurors to be selected from the division where the crime occurred.  Grisham, 63 F.3d at 1078–81.  The Eleventh Circuit held that in both the Jury Selection and Service Act, 28 U.S.C.A. § 1861, *et seq.*, as well as the statutes creating judicial divisions, Congress "did not exercise its power to

define the geographical limits from which a federal jury may be drawn." Id. at 1081; see also United States v. Baker, 98 F.3d 330, 337 (8th Cir. 1996) (district court did not error by refusing defendants' request for trial in, or for a jury drawn from, the division where the offense occurred because there "is no statutory or constitutional right to a jury drawn either from the entire judicial district or from the division in which the offense occurred"); United States v. Balistrieri, 778 F.2d 1226, 1229 (10th Cir. 1985) (upholding district court order that jury be drawn from Green Bay Division of the Eastern District of Wisconsin even though alleged crime occurred in Milwaukee, trial was held in Milwaukee Division, and Green Bay was more rural than Milwaukee, and noting that "the jury is not required to be selected either from the entire district or from the division in which the crime was committed"). Thus, the Eleventh Circuit concluded, "the Sixth Amendment does not entitle a federal criminal defendant to a jury summoned from a fair cross-section of the community immediately surrounding the place of the crime, but merely to a jury drawn from a fair cross-section of some previously defined geographical area within the boundaries of the judicial district in which the offense occurred." Grisham, 63 F.3d at 1080. This holding appears to thwart Defendant Kyrell Benton's argument that the venire must be drawn from a far cross-section of the Savannah Division.

Moreover, to establish a prima facie violation of the fair cross-section requirement, a defendant must show: "(1) that the group alleged to be excluded is a distinctive group in the community, (2) that representation of the group in venires is not fair and reasonable in relation to the number of such persons in the community, and (3) that the underrepresentation is due to systemic exclusion of the group in the jury-selection process." Grisham, 63 F.3d at 1078. "To analyze whether African Americans were fairly and reasonably represented in the jury pool, we compare the difference between the percentage of African Americans in the population eligible

for jury service and the percentage of African Americans in the pool." United States v. Carmichael, 560 F.3d 1270, 1280 (11th Cir. 2009).  Under Eleventh Circuit precedent, "[i]f the absolute disparity between these two percentages is ten percent or less, the second element is not satisfied." Id. (quoting Grisham, 63 F.3d at 1078-79).  Defendant Kyrell Benton cites a disparity of only 4.7% between the African-American populations of the Savannah and Statesboro Divisions.  Putting aside the question of whether a defendant can base a fair cross section challenge on a comparison between the overall populations of two divisions (as opposed to comparing a venire to the population of one division) the disparity Defendant Kyrell Benton cites is less than ten percent.  Thus, it appears he has not established a prima facie violation of the Sixth Amendment.

Nonetheless, in an abundance of caution, the Court will select the jury panel in this case from the Savannah Division QJW.  This will extinguish any concerns Defendants have regarding the fair cross section requirement.  Moreover, as this case was filed in the Savannah Division it would ordinarily be tried before citizens of the Savannah Division.  Further, it will not be unduly burdensome for most jurors within the Savannah Division to travel to Statesboro.  Indeed, some citizens of the Savannah Division live closer or nearly as close to Statesboro as Savannah.   For all these reasons, the Court **GRANTS** Defendant Kyrell Benton's request to have the jury panel selected from citizens of the Savannah Division.

## CONCLUSION

The Court **ORDERS** the United States to file a response to Defendant Stacey Benton's Objection on or before August 10, 2021.  For the reasons stated above, the Court **OVERRULES** Defendants Kyrell Benton's and Tina Lipsey's objections to holding trial outside of the Savannah Division.  The jury selection and trial of this case will commence at the United States Courthouse in Statesboro, Georgia, on August 23, 2021.  However, the Court **GRANTS** Defendant Kyrell Benton's objection to having the jury selected from the Statesboro Division. This case will be tried before a jury comprised of citizens of the Savannah Division.

**SO ORDERED**, this 5th day of August, 2021.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA